UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLO R. VARTINELLI,

           Plaintiff,           Civil Action No. 22-12498

v.                                    Terrence G. Berg
                                   United States District Judge

NORBERT FRONCZAK,         David R. Grand
                                   United States Magistrate Judge

           Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT FRONCZAK'S MOTION TO DISMISS (ECF No. 15)**

*Pro se* plaintiff Carlo R. Vartinelli ("Vartinelli"), an incarcerated person, commenced this civil action against the Michigan Department of Corrections' ("MDOC") Assistant Librarian, Norbert Fronczak ("Fronczak"), pursuant to 42 U.S.C. § 1983. (ECF No. 1). Vartinelli brings First Amendment retaliation and Eighth Amendment claims[1] against Fronczak, alleging that Fronczak subjected him to verbal abuse and harassment in retaliation for his having filed grievances against Fronczak for improperly denying his request for additional law library time and for unprofessional conduct. The case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b). (ECF

---

[1] Vartinelli also raises state law claims of intentional infliction of emotional distress ("IIED"). (ECF No. 1, PageID.8-9). However, because the Court is recommending that all of Vartinelli's federal claims be dismissed, the Court should also decline to exercise supplemental jurisdiction as to Vartinelli's state law IIED claim. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 952-53 (6th Cir. 2010). Thus, Vartinelli's state law IIED claim should be dismissed without prejudice.

No. 11).

On May 4, 2023, Fronczak filed a Motion to Dismiss. (ECF No. 15). Vartinelli filed a response, and Fronczak filed a reply. (ECF Nos. 21, 22).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. LR 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs, and it declines to order a hearing.

I.     RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Fronczak's Motion to Dismiss **(ECF No. 15)** be **GRANTED.**

II.     REPORT

    A.   Background

Vartinelli, who is currently incarcerated at the MDOC's G. Robert Cotton Correctional Facility, brings this civil rights action against Assistant Librarian Fronczak. In his complaint, Vartinelli alleges that Fronczak has continuously subjected him to verbal abuse and harassing conduct in retaliation for complaining orally and in writing that Fronczak improperly denied him additional time at the law library and engaged in unprofessional conduct. Specifically, Vartinelli alleges that, on June 18, 2019, he attended a law library callout and asked Fronczak for "two additional hours" in order to "conduct research" in a case that had an upcoming deadline for one of his filings. (ECF No. 1, PageID.3). In support of his request, Vartinelli allegedly provided a copy of a "court Order" and a notice of appearance by the "Michigan Attorney General." (*Id.*). Vartinelli alleges that, "[w]ithout any provocation," Fronczak "suddenly began to yell loudly, used

2

profanity and demeaning language against [] Vartinelli," screaming, "I don't give [a] shit about rapists wanting more time!" (*Id.*). When Vartinelli asked Fronczak whether "he knew and understood that he was violating MDOC's Policy on 'Humane Treatment,'" Fronczak allegedly "intensified his screaming" and stated, "I don't give [a] shit about what the damned policy says! You heard me or you are f----- deaf!!" (*Id.*). Vartinelli alleges that Fronczak "was screaming so []loud that . . . other prisoners attending the law library witnessed [Fronczak's] provoking, demeaning and harassing conduct." (*Id.*). Despite Vartinelli's alleged attempts to "de-escalate" the situation, Fronczak continued to yell and berate Vartinelli through the use of profanity. (*Id.*, PageID.3-4). Vartinelli eventually asked, "Are you retaliating because of my previous complaints about your unprofessional and intimidating conduct? You are aware I do have a right to engage in protected conduct?," and Fronczak responded, "I don't give [a] shit about prisoners' complaints!! Go ahead and complain more. The administration [won't] believe f------ prisoners anyway!!" (*Id.*, PageID.4). Vartinelli then filed a written grievance, which he pursued through Step III of the grievance process. (*Id.*, PageID.4-5).

Vartinelli alleges that, on September 22, 2019, Lieutenant Peter Neuberger was sent to investigate Vartinelli's grievance against Fronczak. (*Id.*, PageID.5). Vartinelli "informed Lt. [Neuberger] that it was not the first time [Fronczak] humiliated and harassed him," and "explained that he previously engaged in protected conduct by complaining against [Fronczak] [for] continuous degrading statements," such as "calling him 'rapist' ever[y] time he entered the law library." (*Id.*). Vartinelli alleges that he also stated that Fronczak's "inhumane treatment trespassed retaliation because he knowingly labeled and

3

called him a 'rapist' in front of other prisoners and [Fronczak] knew and understood his conduct exposed [] Vartinelli to potential risks of harm." (*Id.*). Lt. Neuberger allegedly responded, "I know other staff has had problems with [] Fronczak. But I have to focus on what he allegedly did in this case," "[t]he 'rapist' calling by [] Fronczak is a very serious misconduct and it is disturbing," and "I determined that all your representations were truthful. The matter will also be handled by Human Services and decide what to do." (*Id.*, PageID.6).

Vartinelli alleges that, on July 24, 2020, he went to the law library and requested copies to be made, at which point Fronczak "verbally humiliated him and called him 'son of a b----' for no reason at all." (*Id.*, PageID.7). Later, on August 12, 2020, he was attending another law library callout when he saw Fronczak "engaged in a heated and hostile argument with prisoner [] Berryman," and Berryman "stated he was going to report [] Fronczak who was throwing a rant inside his office." (*Id.*, PageID.6). Vartinelli alleges that, several minutes later, Fronczak walked toward "the middle of the area where the computers for prisoner[] use are located" and, in a "combative" fashion, screamed, "Anyone else have anything to say!! Anyone else have a problem? I didn't think so!! . . . Keep filing grievances against me and see if you get called out." (*Id.*, PageID.7). Vartinelli filed another grievance against Fronczak complaining of Fronczak's "ill-tempered outburst" and "derogatory and demeaning language," and the Step I respondent informed him that "the conduct reported was going to be investigated internally." (*Id.*, PageID.7, 19). In support of his claims, Vartinelli attached to his complaint salient MDOC grievance documents, his own sworn statement attesting to the incidents above, and two sworn

4

statements from inmates attesting to witnessing Fronczak's degrading and harassing conduct against Vartinelli. (*Id.*, PageID.15-37).

Based on the above, Vartinelli argues that Fronczak retaliated against him for exercising his First Amendment rights and subjected him to inhumane treatment and cruel and unusual punishment in violation of his Eighth Amendment rights. (*Id.*, PageID.7-8). He seeks monetary damages and injunctive relief against further violations of his constitutional rights. (*Id.*, PageID.9-10).

Fronczak now moves to dismiss, arguing that Vartinelli has failed to state a claim upon which relief can be granted and that Fronczak is entitled to qualified immunity. (ECF No. 15).

### B. Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they

5

must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### C. Analysis

In his motion to dismiss, Fronczak argues that Vartinelli's claims against him fail as a matter of law because the "allegations of profane language" in Vartinelli's complaint are insufficient to state a First Amendment retaliation or Eighth Amendment claim. (ECF No. 15-1, PageID.87-91). Vartinelli responds that his complaint sufficiently alleges that he engaged in protected conduct in the form of pursuing "oral and written grievances" against Fronczak for "denying him access to the institutional law library" when he "approached Fronczak's office [and] requested additional two-hours of law-library time he is entitled by policy," and that, in retaliation for such protected conduct, Fronczak repeatedly subjected him to "extreme, outrageous, and intentional retaliatory conduct." (ECF No. 22, PageID.134, 139-51). After careful review of the record and the parties'

6

arguments, the Court agrees that Vartinelli's allegations based on verbal abuse and degrading or harassing conduct do not give rise to First or Eighth Amendment claims.[2]

### i. *First Amendment Retaliation Claim*

As to Vartinelli's First Amendment retaliation claim, a prima facie case for such claim involves three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Vartinelli alleges that he was engaged in protected conduct when he pursued grievances against Fronczak by first complaining orally to Fronczak that he violated MDOC policy by denying Vartinelli's request for two additional hours of law library time and speaking to Vartinelli in a demeaning and hostile manner, and then by filing a written grievance concerning those issues. (*See* ECF No. 1, PageID.15 ("I asked [Fronczak] if he understood his conduct violated MDOC's policy on 'Humane Treatment,' and [] Fronczak intensified his screaming and other prisoners who were present heard [] Fronczak's harassing and threatening behavior. . . . Fronczak has been retaliating against me because I engaged in protected conduct by reporting his illegal conduct, and has continuously [called me] 'rapist'

---

[2] To the extent Vartinelli argues that Fronczak's conduct violated MDOC policy or the Director's Memorandum, such violation itself would not rise to the level of a *constitutional* violation and would not be actionable. *See Brooks v. Washington*, 2021 WL 2024706, at *3 (W.D. Mich. May 21, 2021) ("a defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation").

7

in front of prisoners who work as clerks."); *see also* ECF No. 22, PageID.147 ("Viewing the facts and drawing all inferences in [] Vartinelli's favor, he has presented sufficient evidence that he was engaged in protected conduct. The record facts indicates [] Vartinelli pursued his grievance against Fronczak orally first, in order to resolve Fronczak's conduct and decision to deny [] Vartinelli access to the library conducive to access the courts. . . . Without any provocation, Fronczak intentionally inflicted emotional distress [by] stating: 'I don't give [a] shit about rapist wanting more time!' . . . As a result of Fronczak's unconstitutional conduct, [] Vartinelli filed a grievance . . .")). But even assuming that Vartinelli satisfied his *prima facie* claim's first prong – protected conduct – his allegations that Fronczak verbally abused and berated him in retaliation for such conduct fail to satisfy the second prong – adverse action.

The law is clear that a prison official's mere use of harassing or degrading language, while inappropriate, does not constitute a sufficiently adverse action for purposes of a First Amendment retaliation claim. *See, e.g.*, *Sublett v. McAlister*, 2020 WL 8614219, at *3 (6th Cir. Oct. 9, 2020) ("Verbal abuse does not constitute an adverse action of constitutional significance within the meaning of a First Amendment retaliation claim."); *Lippett v. Duncan*, 2023 WL 2555547, at *4 (E.D. Mich. Mar. 17, 2023) (finding "Plaintiff's retaliation claim arising from alleged verbal harassment and minor threats" were "not adverse actions giving rise to a retaliation claim."); *Carney v. Craven*, 40 F. App'x 48, 50 (6th Cir. 2002) ("An inmate has no right to be free from verbal abuse, [] and minor threats do not rise to the level of a constitutional violation."); *Miles v. State of Michigan, et al.*, 2023 WL 5345242, at *6 (W.D. Mich. Aug. 21, 2023) ("The use of harassing or degrading

8

language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions."). Analyzed against this standard, even liberally construed, Vartinelli's allegations that Fronczak had ill-tempered outbursts and used demeaning and harassing language against him in retaliation for his pursuing "oral and written grievances" against Fronczak fall short of stating a sufficiently adverse action within the meaning of a First Amendment retaliation claim. *See Sublett*, 2020 WL 8614219, at *3. Accordingly, Vartinelli's First Amendment claim should be dismissed for failure to state a claim.

      ii.      *Eighth Amendment Claim*

A similar analysis applies to Vartinelli's Eighth Amendment claim premised on the same allegations of Fronczak's harassing conduct and verbal abuse. Again, such conduct by a prison official, while unprofessional and improper, does not constitute "the type of infliction of pain that the Eighth Amendment prohibits." *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that inmate plaintiff's allegations that prison official "continuously bangs and kicks [his] cell door, throws his food trays through the bottom slot of his cell door so hard that the top flies off, makes aggravating remarks to him, makes insulting remarks about his hair being too long, growls and snarls through his window, smears his window to prevent him from seeing out of it, behaves in a racially prejudicial manner toward him and jerks and pulls him unnecessarily hard when escorting him from his cell," while "shameful and utterly unprofessional . . . are insufficient to establish an Eighth Amendment violation."); *Campbell v. Carney*, 2013 WL 5312662, at *2 (E.D. Mich. Sept. 20, 2013 ("The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional

9

dimensions.") (citing numerous cases for the proposition that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits). Accordingly, Vartinelli's Eighth Amendment claim based on such conduct by Fronczak should also be dismissed for failure to state a claim.[3]

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Fronczak's Motion to Dismiss **(ECF No. 15)** be **GRANTED**.

Dated: August 31, 2023  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections

---

[3] For all these reasons, even liberally construing Vartinelli's complaint, he failed to allege a valid First or Eighth Amendment violation, much less meet his burden to show that it was clearly established that Fronczak's verbal abuse and demeaning behavior was a sufficiently adverse action for purposes of First Amendment retaliation or sufficiently cruel and unusual for purposes of the Eighth Amendment. Thus, Fronczak is entitled to qualified immunity, as well. *See Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021) ("[A] plaintiff bears the burden of overcoming qualified immunity. Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.") (citation and quotation omitted).

which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 31, 2023.

                                                    s/Eddrey O. Butts
                                                    EDDREY O. BUTTS
                                                    Case Manager